IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| STACEY LYNN DRAGOO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | No. 21-4073-KHV |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

MEMORANDUM AND ORDER

Plaintiff appeals the final decision of the Commissioner of Social Security to deny supplemental security income under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. § 1381 et seq. For reasons stated below, the Court affirms the decision of the Commissioner.

Procedural Background

On January 2, 2020, plaintiff protectively filed her application for supplemental security income.[1]   She claimed a disability onset date of December 1, 2019.   Initially and upon reconsideration, the agency denied plaintiff's application.   In March of 2021, after a telephone hearing at which plaintiff and a vocational expert testified, an administrative law judge ("ALJ") denied her claim.   The ALJ found that plaintiff was not under a disability within the meaning of the Social Security Act since January 2, 2020, the date the application was filed.   The Appeals Council denied plaintiff's request for review, making the ALJ decision the final decision

---

[1]      The Social Security Administration explains that "[p]rotective filing is a Social Security term for the first time you contact the Social Security Administration to file a claim for disability or retirement."   Protective filing dates may allow an individual to have an earlier application date than the actual signed application date. See Social Security Disability Resource Center, http://www.ssdrc.com/disabilityquestionsmain20.html (last visited March 14, 2022).

reviewable by this Court.  42 U.S.C. § 405(g).

## Factual Background

The following is a brief summary of the factual record.

Plaintiff is 44 years old and has a generalized educational development certification. Plaintiff has no past relevant work history.  Tr. 25.  She suffers from obesity, disorder of the back, de Quervian's syndrome, chronic obstructive pulmonary disease ("COPD"), depression, anxiety, post-traumatic stress disorder ("PTSD") and a non-specified cognitive disorder.  She alleged mental impairments and conditions affecting her ability to breathe.  She also reported fatigue and shortness of breath with physical activity; social anxiety; difficulty talking to people; and difficulty gripping, writing, typing, repetitive activities and lifting more than ten pounds.  Plaintiff smokes a pack of cigarettes every day.  Tr. 22.

## I.    Plaintiff's Medical Evidence

The following doctors did not testify but plaintiff submitted medical records of treatments by them.

### A.    Simon Joseph, LMSW and Michael Fowler, LSCSW

Since 2002, plaintiff has received treatment from Simon Joseph, LMSW and Michael Fowler, LSCSW at Valeo Behavioral Health.  Tr. 584.  At her intake exam, her remote memory was impaired.  Tr. 587.  They reported that plaintiff had markedly limited skills and a poor work history, required public financial assistance, was unable to procure such assistance without help. She also showed severe inability to establish or maintain a personal support system, evidenced by extreme withdrawal and social isolation.  Tr. 591.  Plaintiff continues to receive treatment there

due to "mood disorder, impairment in social, familial, and work functioning."  Tr. 674.

      B.      <u>Lizhao Wang, Ph.D.</u>

On March 11, 2021, Lizhao Wang, Ph.D. did a neuropsychological evaluation on plaintiff. Tr. 957.  Dr. Wang reported that she showed significant neuropsychological deficits in memory, learning, attention and executive functions. Tr. 959.  The pattern of her neuropsychological profile indicated cognitive disorder.  Tr. 959.  The etiology of her disorder was not clear.  Tr. 959.  Dr. Wang suspected that she suffered from cognitive disorder secondary to neurotransmitter disturbance of the brain, which also caused long-term mood disturbances with depression and anxiety.  Tr. 959.  Sleep disorder with chronic mental fatigue might have contributed to her cognitive disorder as well.  Tr. 959.

Dr. Wang reported that plaintiff had moderate impairments in attention and concentration. Tr. 959.  Her impairment was marked by inattention, poor mental control and poor sustained attention.  Tr. 959.  She had a moderate to severe impairment in memory and learning.  Tr. 959. Her impairment was marked by poor ability to encode new information and retain newly learned information over time.  Tr. 959.  She had mild impairment in executive functions.  Tr. 959.  Her impairment was marked by a poor ability to copy a relatively complex figure and showed omission, distortion, impulsivity and poor self-monitoring in detecting errors that she made on the test. Tr. 959.

Plaintiff showed normal neuropsychological functions in sensory functions of visual, auditory, tactile and olfactory modalities, eye-hand coordination with each hand, hand grip strength with each hand, spontaneous speech in terms of articulation and fluency, auditory comprehension in following commands, reading comprehension, vocabulary, general intellectual functions, conceptual reasoning, visual perceptual functions, self-initiation in generation goal

oriented responses and psychomotor speed.  Tr. 959.

Plaintiff's neuropsychological evaluation did not show evidence of sustained traumatic brain injury, but the results revealed significant symptoms of depression and anxiety.  Tr. 959.

## II.    Plaintiff's Testimony

At a hearing on February 9, 2021,  plaintiff testified to the following: (1) her pulmonary issues cause her to fatigue and wear out quickly, (2) she cannot remember things well and her words come out wrong in social interactions, (3) she does not understand verbal instructions and needs instructions in writing, (4) she can only lift a half gallon of milk without hurting herself because she drops things, (5) when driving, she has a hard time judging distances and depths, (6) she has a hard time vacuuming, (7) she can walk a block or less before needing to stop, (8) she can only prepare simple meals, (9) after going to the grocery store for 30 minutes, she cannot return to work and must rest for the remainder of the day, (10) she has social anxiety at work and has lost jobs because of anxiety, (11) her mind races at work, which causes her to make mistakes, (12) due to anxiety, she has to leave work once a week and take 15-minute breaks every hour and (13) due to pulmonary issues which regularly cause bronchitis and pneumonia, she cannot stand for long periods of time and has lost jobs for that reason.

## III.    ALJ's Medical Evidence

### A.    Melvin Berg, Ph.D.

In March of 2020, Melvin Berg, Ph.D. examined plaintiff for a consultative psychological evaluation.  Tr. 481–83.  Plaintiff exhibited some difficulty with delayed recall but her immediate memory for simple information was intact and she was able to retain and execute simple instructions on all occasions.  Tr. 23. He diagnosed plaintiff with generalized anxiety and mood instability but opined that she had the "the cognitive skills to perform semi-skilled tasks" and could

-5-

"accommodate to the demands of superficial interpersonal interactions, although her anxiety and her affective responses may prevent her from being able to stay committed for an extended period of time." Tr. 483.

### B.   Daniel Gwartney, M.D.

In March of 2020, Daniel Gwartney, M.D., a state agency medical consultant at the initial level, found that plaintiff was able to perform work at all exertional levels, but would need to avoid concentrated exposure to extreme heat, cold, wetness and humidity. Tr. 68–69. He also found that plaintiff should avoid moderate exposure to pulmonary irritants. Tr. 69.

### C.   Steven Akeson, Psy.D.

In March of 2020, Steven Akeson, Psy.D. examined plaintiff and found that she had "moderate" mental limitations in four functional areas, but she could understand, remember and carry out two-step commands involving simple instructions. Tr. 71. He found that she struggled with detailed or complex instructions but was able to adapt to changes that were predictable and introduced gradually. Tr. 71. She performed best in a setting where she had little need for direct supervision or frequent interaction with coworkers or members of the public. Tr. 71.

### D.   Judy Martin, M.D.

In September of 2020, Judy Martin, M.D., a state agency psychiatrist at the reconsideration stage, reviewed the record and found that plaintiff had mild and moderate limitations, but that she could understand, remember and carry out simple instructions. Tr. 92. She could make simple decisions, attend and concentrate for extended periods of time to carry out simple tasks and interact adequately with coworkers and supervisors on a limited basis. Tr. 92. She could also respond

appropriately to minor changes in routine work settings.  Tr. 92.

E.    Charles K. Lee, M.D.

In September of 2020, Charles K. Lee, M.D., a state agency medical consultant at the reconsideration stage, reviewed the record and found that plaintiff was limited to a range of light work.  Tr. 88–90.  She could frequently handle, finger and balance, but she should avoid even moderate exposure to pulmonary irritants.  She could occasionally climb, stoop, kneel, crouch and crawl.  Tr. 89.  Dr. Lee's report was more restrictive than Dr. Gwartney's report at the initial level because he had access to additional records that were submitted after the initial determination.  Tr. 90.

IV.    **ALJ Findings**

The ALJ denied benefits at step five, finding that plaintiff was capable of performing work. In his order of March 31, 2021, the ALJ made the following findings:

> 1.  The claimant has not engaged in substantial gainful activity since January 2, 2020, the application date.
>
> 2.  The claimant has the following severe impairments: obesity, disorder of the back, history of de Quervain's syndrome, COPD, depression, anxiety, PTSD, and a non-specified cognitive disorder.
>
> 3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity[2] to lift 20 pounds occasionally and 10 pounds frequently.  She can stand or walk for six hours out of an eight-hour workday and sit for six hours out of an eight-hour workday.  She can occasionally climb, stoop, kneel, crouch, and crawl.  She can frequently balance.  She can frequently handle and finger.  She must avoid prolonged exposure to temperature extremes, humidity, wetness, chemicals, dust, fumes, and noxious odors.  She is able to carry out detailed but uninvolved instructions in the performance of simple,

---

[2]    "Your residual functional capacity is the most you can still do despite your limitations."  20 C.F.R. § 404.1545(a)(1).

routine, repetitive tasks involving only simple work-related decision, with occasional workplace changes. She can tolerate occasional interaction with coworkers, supervisors, and the public. She can tolerate a low level of work pressure – defined as work not requiring significant independent judgment.

5.  The claimant has no past relevant work.

6.  The claimant was born on December 16, 1976 and was 43 years old, which is defined as a younger individual age 18–49, on the date the application was filed.

7.  The claimant has a limited education.

8.  Transferability of job skills is not an issue because the claimant does not have past relevant work.

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10.  The claimant has not been under a disability, as defined in the Social Security Act, since January 2, 2020, the date the application was filed.

Tr. at 18–27 (citations omitted).

The ALJ noted that plaintiff reported that she could independently perform multistep activities that were inconsistent with severe memory impairment: bathing, dressing, personal hygiene, cooking simple meals, shopping and driving. Tr. 23. Plaintiff told Dr. Wang that she had driven herself to the exam and could independently manage her medications and money without issue. Tr. 23. The ALJ found that plaintiff's ability to perform those tasks was a strong indication that she retained the capacity to perform the physical and mental tasks that are part of everyday basic work activity. Tr. 23.

In determining plaintiff's RFC, the ALJ weighed the medical records from various medical providers and state agency consultants. The ALJ noted that the medical evidence reflected a history of treatment for depression, anxiety and PTSD. Tr. 23. Other than subjective symptoms, however, little evidence supported the severity and degree of limitation that plaintiff asserted.

Tr. 23.  For example, in May of 2020, plaintiff started individual therapy and psychiatric services at Valeo.  Tr. 23.   Her remote memory was impaired at her intake exam, but subsequent exams indicated that her recent and remote memory functions were intact.  Tr. 23.  Further, while plaintiff often presented with a depressed and anxious mood and/or a blunted affect, her exams consistently reflected that she was calm and cooperative, made appropriate eye contact and had intact attention/concentration.  Tr. 23.  Thus, the ALJ found that beyond her own reports, plaintiff had not presented evidence of serious chronic cognitive deficits or difficulty interacting or communicating with others.  Tr. 23.

The ALJ noted that at the initial level, Dr. Gwartney had opined that plaintiff was able to perform work at all exertional levels, so long as she avoided concentrated exposure to extreme heat and cold, wetness and humidity, and moderate exposure to pulmonary irritants.  Tr. 24.  On reconsideration, Dr. Lee opined that plaintiff would be limited to a range of light work and should avoid moderate exposure to pulmonary irritants.  Tr. 24.  Dr. Lee's opinion was more consistent with the record as a whole because he had access to additional records that were submitted after Dr. Gwartney made his initial determination.   Tr. 24.  Thus, the ALJ found Dr. Lee's opinion that plaintiff was limited to a range of light work was more persuasive than Dr. Gwartney's opinion that plaintiff was able to perform work at all exertional levels.  Tr. 24.  Further, the ALJ found that pulmonary studies showing only mild abnormalities were not consistent with Dr. Lee's opinion that the plaintiff must avoid even moderate exposure to pulmonary irritants.  Tr. 24.

Dr. Martin opined that plaintiff had mild limitation in her ability to understand, remember or apply information.  She found that plaintiff could understand, remember and carry out simple instructions, make simple decisions, attend and concentrate for extended periods to carry out simple tasks, interact adequately with coworkers, supervisors and the public on a limited basis and

respond appropriately to minor changes in routine work settings.  The ALJ found that Dr. Martin's opinion was somewhat persuasive and because she had supported it with a narrative summary of the evidence, the ALJ relied on it in part.  Tr. 24.   The ALJ noted that the evaluations by Dr. Berg and Dr. Wang were consistent with a moderate limitation in plaintiff's ability to understand, remember and apply information.  Tr. 24.  On the other hand, the ALJ noted that plaintiff's activities of daily living and mental status suggested that she could handle occasional workplace changes as opposed to only minor changes as Dr. Martin suggested.  Tr. 24.

The ALJ found that Dr. Akeson supported his opinion that plaintiff has moderate limitation in all four functional areas and should be limited to only two-step instructions.  Tr. 24.  A limitation to two-step instructions was inconsistent, however, with Dr. Berg's consultative psychological evaluation or plaintiff's various daily activities.  Tr. 24.  Thus, the ALJ found that Dr. Akeson's opinion was only somewhat persuasive because it was only somewhat consistent with substantial record evidence.  Tr. 24.

The ALJ found Dr. Wang's medical opinion—that plaintiff had a moderate impairment in attention and concentration and a moderate to severe impairment in memory and learning—was only somewhat persuasive. Tr. 25.  The ALJ noted that Dr. Wang's testing and mental status examinations supported a finding that plaintiff had a moderate impairment in attention and concentration. Tr. 25. While Dr. Wang's tests supported his opinion that plaintiff had moderate to severe impairment in memory, however, plaintiff's activities of daily living and other evidence contradicted that finding.  Tr. 25.  Further, while plaintiff demonstrated some difficulty with delayed recall during Dr. Berg's consultative psychological evaluation, her exams had otherwise generally shown that her memory functions are intact.  Tr. 23.

Based on the foregoing, the ALJ found that plaintiff's RFC was as follows: (1) plaintiff

had the capacity to lift 20 pounds occasionally and 10 pounds frequently, (2) she could stand or

walk for six hours out of an eight-hour workday and sit for six hours out of an eight-hour workday,

(3) she could occasionally climb, stoop, kneel, crouch and crawl,  (4) she could frequently balance,

handle and finger, (5) she must avoid prolonged exposure to temperature extremes, humidity,

wetness, chemicals, dust, fumes and noxious odors, (6) she was able to carry out detailed but

uninvolved instructions in the performance of simple, routine and repetitive tasks involving only

simple work-related decisions, with occasional workplace changes, (7) she could tolerate

occasional interaction with coworkers, supervisors and the public and (8) she could tolerate a low

level of work pressure, i.e. work not requiring significant independent judgment.

After determining plaintiff's RFC, to determine whether plaintiff could perform jobs that

existed in the national economy, the ALJ presented a hypothetical question to the vocational expert

("VE")[3] which included limitations such as her age, education, work experience and RFC.  Tr. 26.

The VE identified three jobs from the Dictionary of Occupational Titles[4] ("DOT") that plaintiff

could perform with her limitations: Marker (DOT 209.587-034), Router (DOT 222.587-038) and

Photocopy Machine Operator (DOT 207.685-014).   Tr. 26.   The VE did not identify any

inconsistencies within the foregoing occupational testimony and the DOT.  Tr. 26.  The ALJ posed

---

[3]        A VE provides evidence in Social Security disability adjudications by answering
questions posed by the ALJ and the claimant or the claimant's representative based on hypothetical
findings of age, education, work experience and the RFC.  A VE cannot comment on medical
matters, such as whether he or she believes that the medical evidence indicates a certain diagnosis,
disability determination or functional limitation.        See Social Security Administration,
https://www.ssa.gov/appeals/ve.html (last visited March 30, 2022).

[4]        The DOT is used in Social Security disability adjudications as the primary source
of occupational information to determine whether an individual can perform a position.  See U.S.
Department of Labor, https://www.dol.gov/agencies/oalj/topics/libraries/LIBDOT (last visited
March 16, 2022).

a hypothetical to the VE which included the same limitations as the previous hypothetical but added limitations of inability to interact with co-workers, supervisors or the public, maintain attention and concentration for periods at a time, maintain acceptable levels of punctuality or attendance and missing three to four days of work.  Tr. 54–55.  The VE testified that significant numbers of such jobs did not exist with these limitations.  Tr. 54–55.

Based on the VE's testimony, the ALJ found that considering plaintiff's age, education, work experience and RFC, plaintiff is capable of making a successful adjustment to work that exists in significant numbers in the national economy and that she was not disabled.  Tr. 26.

## Standard of Review

The Court must determine whether the Commissioner's decision is free from legal error and supported by substantial evidence.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  (quoting Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)). It requires "more than a scintilla, but less than a preponderance."  Id.  (quoting Lax, 489 F.3d at 1084). Evidence is not substantial if it is "overwhelmed by other evidence in the record or constitutes mere conclusion."  Grogan v. Barnhart, 399 F.3d 1257, 1261–62 (10th Cir. 2005).  To determine if the decision is supported by substantial evidence, the Court will not reweigh the evidence or retry the case, but will examine the record as a whole, including anything that may undercut or detract from the Commissioner's findings.  Flaherty v. Astrue, 515 F.3d 1067, 1070 (10th Cir. 2007).

## Analysis

Plaintiff bears the burden of proving disability under the Social Security Act. See Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).   The Social Security Act defines

"disability" as the inability to engage in any substantial gainful activity for at least 12 months due to a medically determinable impairment.    42 U.S.C. § 423(d)(1)(A).   To determine whether claimant is disabled, the Commissioner applies a five-step sequential evaluation: (1) whether claimant is currently working; (2) whether claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) whether the impairment prevents claimant from continuing past relevant work; and (5) whether the impairment prevents claimant from doing any kind of work.  See 20 C.F.R. §§ 404.1520, 416.920.  If claimant satisfies steps one, two and three, she will automatically be found disabled; if claimant satisfies steps one and two, but not three, she must satisfy step four.  If step four is satisfied, the burden shifts to the Commissioner to establish that claimant is capable of performing work in the national economy.  See Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988).

Here, the ALJ denied benefits at step five, finding that plaintiff is capable of performing work with certain restrictions.

Plaintiff argues that at Step 5, the ALJ adopted an RFC that was unsupported by substantial evidence because rather than treatment records from Valeo Behavioral Health and Dr. Wang, the ALJ relied on state agency medical consultants whose reports lacked a proper foundation.  Plaintiff also argues that the ALJ erred by posing a hypothetical to the VE that he did not consider in his final opinion.

I.      **RFC Assessment**

Plaintiff argues that at Step 5, the ALJ adopted an RFC that was unsupported by substantial evidence because rather than treatment records from Valeo Behavioral Health and Dr. Wang, the ALJ relied on state agency medical consultants whose reports lacked a proper foundation.

Defendant argues that the ALJ complied with the regulatory requirements and among other evidence, properly considered evidence from the state agency medical consultants, Dr. Wang and Valeo Behavioral Health Care.

The ALJ found that plaintiff had the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently. She could stand or walk for six hours out of an eight-hour workday and sit for six hours out of an eight-hour workday. She could occasionally climb, stoop, kneel, crouch and crawl. She can frequently balance, handle and finger. She must avoid prolonged exposure to temperature extremes, humidity, wetness, chemicals, dust, fumes and noxious odors. She was able to carry out detailed but uninvolved instructions in the performance of simple, routine and repetitive tasks involving only simple work-related decisions, with occasional workplace changes. She could tolerate occasional interaction with coworkers, supervisors and the public. She could tolerate a low level of work pressure—defined as work not requiring significant independent judgment.

A plaintiff's RFC is based on how plaintiff's physical and mental limitations affect her ability to work and is "the most [a plaintiff] can still do despite [those] limitations." 20 C.F.R. § 404.1545(a)(1); see also SSR 96-8p, 1996 WL 374184 at *2 ("RFC is what an individual can still do despite his or her limitations."). The ALJ must base the RFC assessment on all relevant evidence in the record, such as medical history, laboratory findings, effects of treatment and symptoms, reports of daily activities, lay evidence, recorded observations, medical source statements, evidence from attempts to work, need for a structured living environment and work evaluations, if any. Id. at *5. The ALJ's "determination of [a plaintiff's] mental RFC involves the consideration of evidence, such as . . . [r]eports of the individual's activities of daily living and work activity, as well as testimony of third parties about the individual's performance and

behavior." SSR 85-16, 1985 WL 56855 at *2.

Under 20 C.F.R. § 404.1520c, the ALJ should consider the following factors when evaluating medical opinions and prior administrative medical findings: (1) the supportability, or the relevancy of the medical evidence and supporting explanations, of the medical opinion, (2) the consistency of the medical opinion with the evidence from other medical sources and nonmedical sources in the claim, (3) the medical source's relationship with the claimant, such as the length of the relationship, the frequency of examinations, the purpose of the relationship, the extent of the relationship and the nature of the examining relationship, (4) the medical source's specialization and (5) other factors, such as the medical source's familiarity with the other evidence in the claim or an understanding of the disability program's policies and evidentiary requirements. Supportability and consistency are the two most important factors in determining the persuasiveness of a medical source's medical opinion or a prior administrative medical finding.[5] 20 C.F.R. § 404.1520c(b)(2).

Plaintiff argues that the ALJ should have given "a hard look or serious consideration" to opinions by Dr. Wang and Valeo Behavioral Health Care because they examined and treated her as opposed to merely reviewing her medical records. Specifically, plaintiff argues that the ALJ's decision regarding these medical opinions did not comply with 20 C.F.R. § 404.1520c because the ALJ "rejected" their opinions even though they were supportable and consistent, Dr. Wang and Valeo Behavioral Health Care had long-standing relationships with plaintiff and they were specialists in the relevant impairments.

Dr. Wang reported that plaintiff showed significant neuropsychological deficits in

---

[5]     State agency medical dond psychological consultants are considered "prior administrative medical findings." 20 C.F.R. § 416.913(a)(5).

memory, learning, attention and executive functions.   The pattern of her neuropsychological profile indicated cognitive disorder.   Her impairment was marked by inattention, poor mental control and poor sustained attention.   Dr. Wang found that plaintiff had a moderate to severe impairment in memory and learning.   The ALJ considered Dr. Wang's medical opinion and found it to be only somewhat persuasive. He noted that Dr. Wang's examinations supported a finding that plaintiff had a moderate impairment in attention and concentration.   The ALJ also found that while her tests supported her opinion that plaintiff had moderate to severe impairment in memory, plaintiff's activities of daily living and other evidence contradicted that finding.

The ALJ also considered the records from Valeo Behavioral Health which opined that plaintiff's remote memory was impaired.   Valeo reported that plaintiff had markedly limited skills and a poor work history, required public financial assistance, was unable to procure such assistance without help and showed severe inability to establish or maintain a personal support system, evidenced by extreme withdrawal and social isolation.   The ALJ found that little evidence supported the severity and degree of limitation which plaintiff asserted.   For example, while plaintiff presented with remote memory impairment at her intake exam, her recent and remote memory functions were intact at subsequent exams.   Her exams at Valeo consistently reflected that plaintiff was calm and cooperative, made appropriate eye contact and her attention/concentration was intact.   Thus, the ALJ found that plaintiff's mental status examinations at Valeo did not reveal serious chronic cognitive deficits or evidence of difficulty interacting or communicating with others.

In his decision, the ALJ specifically addressed the records from Dr. Wang and Valeo and based on supportability and consistency, explained why he did or did not adopt them.

According to SSR 96-8p, the RFC assessment "must include a narrative discussion

describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence."  SSR 96-8p, 1996 WL 374184 at *7.  If the RFC conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  Id.  Plaintiff does not explain how the ALJ's RFC limitations are inconsistent with the findings of Dr. Wang or Valeo, and the Court will not label findings as inconsistent if they can be harmonized.  Chismarich v. Berryhill, 888 F.3d 978, 980 (8th Cir. 2018).

The record contains substantial evidence to support the ALJ's findings.  The Court will not reweigh the evidence and substitute its own judgment for that of the ALJ.  Flaherty, 515 F.3d at 1070.

## II.    VE Hypothetical

The ALJ relied on VE testimony to meet his burden at step five.  The ALJ submitted two different hypothetical scenarios to the VE.  The first hypothetical related to whether an individual of plaintiff's age, education, work experience and RFC could perform work existing in significant numbers in the national economy.  The expert testified that an individual could perform work existing in significant numbers.  The ALJ then presented a hypothetical scenario that incorporated more of the functional limitations suggested by Dr. Wang and plaintiff's attorney.    The VE concluded that plaintiff would not be able to find work under those limitations.

Plaintiff argues that the ALJ erred by posing a hypothetical to the VE that he did not consider in his final opinion.  Defendants argue that the ALJ was not required to accept the answer to the hypothetical if the ALJ did not ultimately find that the record supported the limitations included in the hypothetical.

The ALJ is not required to accept the answer to a hypothetical question that includes limitations claimed by plaintiff but not accepted by the ALJ.  Bean v. Chater, 77 F.3d 1210, 1214

(10th Cir. 1995).  As stated above, the ALJ properly considered and weighed Dr. Wang's opinion, and he was not required to accept the answer to the hypothetical upon finding that the opinions of Dr. Wang and Valeo were not supported by the record.  Accordingly, plaintiff has not established an error in the ALJ's opinion regarding the VE testimony.

**IT IS THEREFORE ORDERED** that the Judgment of the Commissioner is **AFFIRMED.**

Dated this 14th day of June, 2022 at Kansas City, Kansas.


s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge